UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: GREEKTOWN HOLDINGS, LLC

Debtor,

_____/

BUCHWALD CAPITAL ADVISORS, LLC,
solely in its capacity as Litigation Trustee for
the Greektown Litigation Trust,

Plaintiff,

v.

DIMITROS ("JIM") PAPAS, et al.,

Defendants.

_____/

SAULT STE. MARIE TRIBE OF CHIPPEWA
INDIANS; KEWADIN CASINOS GAMING
AUTHORITY,

Appellants,

v.

BUCHWALD CAPITAL ADVISORS, LLC,
Litigation Trustee for the Greektown
Litigation Trust,

Appellees.

_____/

Bankr. Case No. 08-53104
Chapter 11
Bankruptcy Judge Walter Shapero

Adv. Pro. 10-05712

FILED
JUN 0 9 2015
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

Case No. 14-14103

Paul D. Borman
United States District Judge

OPINION AND ORDER REVERSING THE BANKRUPTCY COURT'S AUGUST 13, 2014
ORDER DENYING THE TRIBE'S RENEWED MOTION TO DISMISS ON THE GROUNDS
OF SOVEREIGN IMMUNITY AND REMANDING FOR FURTHER PROCEEDINGS

This matter is before the Court on Appellants Sault St. Marie Tribe of Chippewa Indians and

1

Kewadin Casinos Gaming Authority's (Appellants or collectively "the Tribe") appeal of United States Bankruptcy Judge Walter J. Shapero's August 13, 2014 Opinion and Order denying Appellants' motion to dismiss based on sovereign immunity. (ECF No. 1, Notice of Appeal; ECF No. 8, Brief of Appellant.) Appellee Buchwald Capital Advisors LLC, Litigation Trustee for the Greektown Litigation Trust (Appellee or "the Litigation Trustee") filed a Response (ECF No. 10) and the Tribe filed a Reply (ECF No. 12). The Court held a hearing on April 1, 2015.

For the reasons that follow, the Court REVERSES the decision of the Bankruptcy Court, finds that Congress did not clearly and unequivocally express an intent to abrogate the sovereign immunity of Indian tribes in section 106(a) of the Bankruptcy Code, and REMANDS the matter to the Bankruptcy Court for further proceedings on the issue of whether the Tribe waived its sovereign immunity from suit in the underlying bankruptcy proceedings.

## INTRODUCTION

In this bankruptcy appeal, the Tribe challenges the Bankruptcy Court's ruling in the underlying Adversary Proceeding that Congress intended to abrogate tribal sovereign immunity from suit in section 106(a) of the Bankruptcy Code when it abrogated the sovereign immunity of "governmental unit[s]," and further defined a "governmental unit" in section 101(27) of the Bankruptcy Code to include "other . . . domestic government[s]." The Tribe appeals the Bankruptcy Court's Order denying its motion to dismiss based on sovereign immunity, arguing that the failure of the Legislature to clearly and unequivocally manifest an intent to abrogate tribal sovereign immunity when describing the entities whose sovereign immunity was abrogated under the Bankruptcy Code requires dismissal of the claims against it in the Bankruptcy Court Adversary Proceeding. The Litigation Trustee responds that the Legislature need not invoke the magic words

2

"Indian tribes" when intending to remove the cloak of sovereign immunity that otherwise shields Indian tribes from suits against them and argues that the Legislature clearly and equivocally intended just that when it included the catchall phrase "or other . . . domestic government" in section 101(27) of the Bankruptcy Code when defining the term "governmental unit."

## I.    BACKGROUND

On May 28, 2008, Greektown Holdings, LLC and certain affiliates (collectively the "Debtors"), commenced proceedings under Chapter 11 of the United States Bankruptcy Code, *In re: Greektown Holdings, LLC, et al., Debtors* (E. D. Mich. Bankr. No. 08-53104). On or about May 28, 2010, this Adversary Proceeding was commenced, *The Official Committee of Unsecured Creditors on Behalf of the Estate of Greektown Holdings, LLC[1] v. Dimitrios ("Jim") Papas, Viola Papas, Ted Gatzaros, Maria Gatzaros, Barden Development, Inc., Lac Vieux Desert Band of Lake Superior Chippewa Indians, Sault Ste. Marie Tribe of Chippewa Indians, Kewadin Casinos Gaming Authority, and Barden Nevada Gaming, LLC*, (E.D. Mich. Bankr. Adv. Pro. No. 10-05712). The Complaint in the Adversary Proceeding alleges that $177 million was fraudulently transferred by the debtor, Greektown Holdings, LLC ("Holdings"), to the Defendants for no or inadequate consideration. (Adv. Pro. ECF No. 1, Complaint.)[2]    The Complaint alleges that the fraudulent

---

[1] By Stipulation dated August 9, 2012 (and approved by Consent Order dated August 14, 2010) the Defendants agreed that Buchwald Capital Advisors LLC ("Buchwald"), in its capacity as the Litigation Trustee of the Greektown Litigation Trust and in its capacity as the Trustee of the Greektown General Unsecured Creditors Distribution Fund Trust , replace the Official Committee of Unsecured Creditors of Greektown Holdings, LLC (the "Committee") as Plaintiff in this Adversary Proceedings. (Bankr. ECF. No. 3359, p. 3 ¶ 8.) When referring to docket entries in the underlying Bankruptcy Proceeding, (E. D. Mich. Bankr. No. 08-53104), the Court will use the reference "Bankr. ECF No. __."

[2] When referring to docket entries in the MUFTA Adversary Proceeding, (Adv. Pro. No. 10-05712), the Court will use the reference "Adv. Pro. ECF No. __."

3

transfers from Holdings may be avoided and recovered under sections 544 and 550 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and under the Michigan Uniform Fraudulent Transfers Act ("MUFTA") (Mich. Comp. Laws § 566.31, *et seq.*).

Shortly after the Adversary Proceeding was commenced, on June 25, 2010, the Tribe filed a motion to dismiss the MUFTA claims against it on the grounds of sovereign immunity. (Adv. Pro. ECF No. 8.) The Litigation Trustee opposed the motion (Adv. Pro. ECF No. 56) and the Tribe replied (Adv. Pro. ECF No. 69). Subsequently the parties stipulated to bifurcate the hearing on the motion to dismiss to first decide the purely legal question of whether Congress, in Section 106(a) of the Bankruptcy Code, abrogated the Tribe's sovereign immunity and thereafter, if necessary, to decide whether the Tribe waived its sovereign immunity by participating in the Bankruptcy proceedings. The Bankruptcy Court heard oral argument on December 29, 2010, and took the matter under advisement.

While the issue of sovereign immunity was still under advisement in the Bankruptcy Court, in 2012 the Tribe and the Litigation Trustee reached a settlement, filed a motion to have the settlement approved and requested that the Bankruptcy Court hold off ruling on the Tribe's motion to dismiss pending a decision on the Settlement Motion. This Court approved the Settlement Agreement, which contained a claims bar order that was an important aspect of the Settlement Agreement. (*In re Greektown Holdings, LLC*, Case No. 12-12340, ECF No. 10, Opinion and Order Granting Corrected Motion for Order Approving Settlement Agreement.) The non-settling Defendants in the Adversary Proceeding, Maria Gatzaros, Ted Gatzaros, Dimitrios Papas and Viola Papas ("the Papas and Gatzaros Defendants"), appealed the Court's Order approving the Settlement Agreement, objecting to the inclusion of the claims bar order. (*In re Greektown*, No. 12-12340, ECF

4

No. 33, Notice of Appeal.) The Sixth Circuit reversed and remanded with instructions to this Court

to reconsider the propriety and scope of the claims bar order. With the claims bar order under fire,

the parties stipulated in this Court to withdraw the motion for an order approving the settlement and

the case was dismissed. (*In re Greektown*, No. 12-12340, ECF Nos. 48, 49, Stipulation and

Dismissal.) The parties thereafter agreed to voluntary mediation before Bankruptcy Chief Judge

Phillip Shefferly in an effort to resolve all of the claims against the all of the remaining Defendants

in the MUFTA Adversary Proceeding. Despite their efforts under Judge Shefferly's guidance, the

parties were unable to achieve a settlement of the Adversary Proceeding. (Adv. Pro. ECF No. 449,

Mediator's Certificate, 6/2/2014). To date, a global settlement has not been reached.

On June 9, 2015, with settlement negotiations at a standstill, the Tribe renewed its 2010

motion to dismiss on the grounds of sovereign immunity. (Adv. Pro. ECF No. 453, Renewed and

Supplemented Motion to Dismiss Adversary Proceeding Re: Sovereign Immunity.) On June 27,

2015, the Litigation Trustee responded and opposed the motion. (Adv. Pro. ECF No. 463.)[3] The

Tribe replied (Adv. Pro. ECF No. 469) and the Bankruptcy Court heard oral argument on July 21,

2014.

On August 13, 2014, the Bankruptcy Court issued its Opinion and Order Denying the Tribe's

Renewed and Supplemented Motion, concluding that "Congress sufficiently, clearly, and

unequivocally intended to abrogate [the Tribe's] sovereign immunity in [section 106 of the

---

[3] The additional remaining Defendants in the MUFTA Adversary Proceedings, Maria Gatzaros, Ted
Gatzaros, Dimitrios Papas and Viola Papas ("the Papas and Gatzaros Defendants") also filed a
response to the Tribe's motion to dismiss on grounds of sovereign immunity, indicating that they
take "no position on whether [legal precedent] entitled the Tribe to dismissal." (Adv. Pro. ECF No.
465, Response at 3.) The Papas and Gatzaros Defendants take the position, however, that "[i]f the
Tribe is found to be sovereignly immune and dismissed from this case, Papas' and Gatzaros' rights
and defenses will be so seriously impaired that their own dismissal will be required." *Id*. at 6.

Bankruptcy Code]." (August 12, 2014 Opinion and Order, Adv. Pro. ECF No. 474 at 36.) The Tribe

now appeals that ruling to this Court. The question to be answered is purely one of statutory

construction: Does Section 106 of the Bankruptcy Code, by reference to section 101(27)'s definition

of "governmental unit" to include "other . . . domestic government[s]," clearly and unequivocally

express Congress's intent to abrogate the sovereign immunity of Indian tribes? As discussed *infra*,

the Court concludes that it cannot say "with perfect confidence" that Congress intended, by using

the generic phrase "other domestic governments" in § 101(27), to clearly, unequivocally,

unmistakably and without ambiguity abrogate tribal sovereign immunity in § 106(a) of the

Bankruptcy Code.

Accordingly, the Court REVERSES the August 13, 2014 Order of the Bankruptcy Court,

finds that Congress did not clearly and unequivocally express an intent to abrogate the sovereign

immunity of Indian tribes in section 106(a) of the Bankruptcy Code, and REMANDS this matter to

the Bankruptcy Court for further proceedings to address the limited factual issue of whether the

Tribe, while enjoying sovereign immunity from suit under the relevant provisions of the Bankruptcy

Code, nonetheless waived that immunity in this proceeding.[4]

---

[4] In the underlying Adversary Proceeding, the Litigation Trustee responded to the Tribe's motion to dismiss arguing in part that, even assuming the Tribe enjoyed sovereign immunity from suit, the Tribe waived that immunity by "causing the bankruptcy filings" in the underlying proceedings. (Adv. Pro. ECF No. 56, Response and Brief in Opposition to Motion of Defendants Sault Ste. Marie Tribe of Chippewa Indians and Kewadin Casinos Gaming Authority 2 n. 3.) The Bankruptcy Court subsequently, on December 23, 2010, entered a stipulated order bifurcating argument and determination on the Tribe's motion to dismiss. (Adv. Pro. ECF No. 85, Order Upon Stipulation Regarding Bifurcation of Argument on Motions to Dismiss.) The parties agreed to have the bankruptcy court first decide the legal issue of whether Congress abrogated the Tribe's sovereign immunity in section 106 of the Bankruptcy Code and to hold the waiver issue in abeyance pending that ruling. If the bankruptcy court found in favor of the Tribe, the bankruptcy court would schedule a status conference at which the parties would determine a schedule for briefing (and possibly limited discovery) on the issue of waiver. At the hearing on the Tribe's appeal in this Court, the parties

## II.   JURISDICTION AND STANDARD OF REVIEW

The parties do not dispute this Court's jurisdiction to entertain the Tribe's appeal. Under 28

U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals "from final judgments, orders, and

decrees" issued by the Bankruptcy Court. The denial of a motion to dismiss on the grounds of

sovereign immunity is an immediately appealable "collateral order." *Sault Ste. Marie Tribe of*

*Chippewa Indians v. State of Michigan*, 5. F.3d 147, 149-50 (6th Cir. 1993). A ruling on a motion

to dismiss a bankruptcy court adversary proceeding is reviewed *de novo*. *In re Grenier*, 430 B.R.

446, 449 (E.D. Mich. 2010) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

A motion to dismiss on the basis of sovereign immunity tests the Court's subject matter

jurisdiction to entertain the action. *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*,

585 F.3d 917, 919-20 (6th Cir. 2009). The Tribe moves under Fed. R. Civ. P. 12(b)(1) to dismiss

the Complaint in the Adversary Proceeding for lack of subject matter jurisdiction. "In determining

whether the Court has subject matter jurisdiction of a claim under Fed. R. Civ. P. 12(b)(1), the Court

must assume that plaintiffs' allegations are true and must construe the allegations in a light most

favorable to them." *3D Systems, Inc. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 802 (E.D. Mich.

2008) (citing *Little Traverse Bay Bands of Odawa Indians v. Great Spring Waters of America, Inc.*,

203 F. Supp. 2d 853, 855 (W.D. Mich. 2002)). "Relief is appropriate only if, after such construction,

it is apparent to the district court that there is an absence of subject matter jurisdiction." *Id.* at 803.

"Where jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), a plaintiff bears the burden of

---

acknowledged this agreement and concurred that the issue of waiver should be addressed in the first instance by Judge Shapero. (ECF No. 14, Transcript of April 1, 2015 Bankruptcy Appeal Hearing at 41-42.) Accordingly the Court REMANDS this matter to the Bankruptcy Court for further proceedings related to the issue of waiver.

proving jurisdiction in order to survive the motion." *Id.* (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986))."

## III.   ANALYSIS

The parties are in agreement that "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998). Tribal sovereign immunity is a matter of common law, a judicially created doctrine, not deriving from the Eleventh Amendment or an act of Congress. *Id.* at 756 (noting that the doctrine of tribal immunity developed "almost by accident" and is said to rest in the Supreme Court's decision in *Turner v. United States*, 248 U.S. 354 (1919)). "*Turner's* passing reference to immunity, however, did become an explicit holding that tribes had immunity from suit." *Id.* at 757 (citing *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512 (1940) (*USF & G*) (holding that "Indian Nations are exempt from suit without Congressional authorization").

"To abrogate tribal immunity, Congress must "unequivocally" express that purpose." *C&L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 418 (2001) ("*Potawatomi*") (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). As Judge Shapero noted in his Opinion and Order, the Tribe throughout retains "a thumb on the interpretive scale tending to tip the balance in their favor in the event of an ambiguity or lack of clarity." (8/12/2014 Opinion and Order 36.) *See Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985) ("statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit"); *Federal Aviation Administration v. Cooper*, 132 S.Ct. 1441, 1448 (2012) ("Legislative history cannot supply a waiver that is not clearly evident from the language of the

8

statute. Any ambiguities in the statutory language are to be construed in favor of immunity, so that the [Tribe's] consent to be sued is never enlarged beyond what a fair reading of the text requires. Ambiguity exists if there is a plausible interpretation of the statute that would not authorize" suit against the Tribe.) (internal quotation marks and citations omitted) (alteration added).[5] Finally, although immune from suit absent express abrogation by Congress, Indian tribes remain bound to comply notwithstanding the fact that the laws cannot be enforced against them:

> To say substantive state laws apply to off-reservation conduct, however, is not to say that a tribe no longer enjoys immunity from suit. In *[Oklahoma Tax Com'n v. Citizen Band] Potawatomi [Indian Tribe of Oklahoma*, 498 U.S. 505 (1991)]* for example, we reaffirmed that while Oklahoma may tax cigarette sales by a Tribe's store to nonmembers, the Tribe enjoys immunity from a suit to collect unpaid state taxes. 498 U.S., at 510, 111 S.Ct., at 909-910. There is a difference between the right to demand compliance with state laws and the means available to enforce them. *See id.*, at 514, 111 S.Ct., at 911-912.

*Kiowa*, 523 U.S. at 755.

Whether Congress has unequivocally expressed the intent, in section 106 of the Bankruptcy Code, to abrogate tribal sovereign immunity is the question presented in this bankruptcy appeal. The issue has been analyzed by a handful of courts, leading to two irreconcilable conclusions. *Compare, e.g, Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055 (9th Cir. 2004), *cert. denied, Navajo*

---

[5] Tribal immunity derives from the common law, *see Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 54 (1978) (observing that "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers"), and the Supreme Court has relied upon Eleventh Amendment immunity cases in defining the requirements of waiver of tribal immunity. *See Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dept. of Labor*, 187 F.3d 1174, 1181 (10th Cir. 1999) (noting that courts have used similar language in defining the requirements of waiver of these immunities) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (noting that Congress must "unequivocally express its intent to abrogate the immunity) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985), an Eleventh Amendment immunity case). *See also Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1056 (9th Cir. 2004) (when analyzing whether tribal sovereign immunity is abrogated, courts "may look to state sovereign immunity precedent to help determine how "explicit" an abrogation must be").

*Nation v. Krystal Energy Co., Inc.*, 543 U.S. 871 (2004) (finding that sections 106(a) and 101(27) of the Bankruptcy Code expressly and unequivocally waive the sovereign immunity of an Indian tribe) *with In re Whittaker*, 474 B.R. 687 (B.A.P. 8th Cir. 2003) (finding that Congress did not unequivocally express its intent to abrogate tribal sovereign immunity in actions under the Bankruptcy Code).

## A.    The Statutory Text and the Interpretive Issue

11 U.S.C. § 106(a) provides as follows:

§ 106. Waiver of sovereign immunity

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of

10

action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate. 11 U.S.C. § 106 (1995).

The claims in this MUFTA Adversary Proceeding are brought under Sections 544 and 550 of the Bankruptcy Code and thus would be claims as to which the sovereign immunity of "governmental units" has been abrogated. 11 U.S.C. § 101(27) in turn defines "governmental unit" as follows:

(27) "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

It is not disputed that these statutory sections do not specifically mention "Indian tribes," nor does any other provision of the Bankruptcy Code expressly mention "Indian tribes." *In re Nat'l Cattle Cong.*, 247 B.R. 259, 267 (Bankr. N.D. Iowa 2000) (concluding that Congress has not unequivocally abrogated the Tribe's sovereign immunity to suit under the Bankruptcy Code and noting that the "Code makes no specific mention of Indian tribes"). The issue is whether the Tribe can be considered a "governmental unit" whose sovereign immunity is abrogated under section 106(a) because Congress defined "governmental unit" to include, in addition to those sovereign entities specifically listed, "other domestic government[s]."

To summarize the opposing arguments, the Litigation Trustee asserts that the Tribe is

11

undeniably both "domestic," i.e. not foreign, and a "government," i.e. possessing sovereign status. The Litigation Trustee notes that the Supreme Court has historically used both terms (although admittedly never together apart from a very recent reference discussed *infra*) when referring to Indian tribes, describing them, for example, as "tribal governments" and "domestic dependent nations." The Tribe argues that the Supreme Court has never referred to Indian tribes with the phrase "domestic governments" and insists that in order to abrogate tribal immunity, Congress must invoke the phrase Indian tribes, tribal governments, or some verbiage that uniquely and historically has been used to describe the Indian tribes. The Tribe submits that the phrase "domestic government" is not sufficiently unequivocal, without specific reference to Indian tribes, to state an intent to include Indian tribes among the entities whose sovereign immunity has been waived in section 106(a) of the Bankruptcy Code.

### B.      The Common Law Doctrine of Tribal Sovereign Immunity

The Supreme Court recently addressed the issue of tribal sovereign immunity in *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024 (2014). In *Bay Mills*, the Supreme Court held that tribal sovereign immunity protected Bay Mills from suit against it for opening a casino outside Indian lands. At issue was the interpretation of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*, which creates the framework for regulating gaming activity on Indian lands. 134 S.Ct. at 2028. The opinion is important for our purposes not for its ultimate interpretation of the IGRA but rather for its restatement of the historical underpinnings of the doctrine of tribal sovereign immunity and its refusal to revisit and reverse course on prior decisions holding that tribal immunity cannot be abrogated absent an express Congressional statement or waiver.

By way of background, the Court in *Bay Mills* provided the following historical synopsis of

12

the Court's own rulings on the judicially created, common law doctrine of tribal sovereign immunity:

> Indian tribes are "'domestic dependent nation'" that exercise "inherent sovereign authority." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) ( *Potawatomi* ) (quoting *Cherokee Nation v. Georgia*, 5 Pet. 1, 17, 8 L.Ed. 25 (1831)). As dependents, the tribes are subject to plenary control by Congress. *See United States v. Lara*, 541 U.S. 193, 200, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004) ("[T]he Constitution grants Congress" powers "we have consistently described as 'plenary and exclusive'" to "legislate in respect to Indian tribes"). And yet they remain "separate sovereigns pre-existing the Constitution." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Thus, unless and "until Congress acts, the tribes retain" their historic sovereign authority. *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).
>
> Among the core aspects of sovereignty that tribes possess—subject, again, to congressional action—is the "common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo*, 436 U.S., at 58, 98 S.Ct. 1670. That immunity, we have explained, is "a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.*, 476 U.S. 877, 890, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986); *cf.* The Federalist No. 81, p. 511 (B. Wright ed. 1961) (A. Hamilton) (It is "inherent in the nature of sovereignty not to be amenable" to suit without consent). And the qualified nature of Indian sovereignty modifies that principle only by placing a tribe's immunity, like its other governmental powers and attributes, in Congress's hands. *See United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940) ( *USF & G* ) ("It is as though the immunity which was theirs as sovereigns passed to the United States for their benefit"). Thus, we have time and again treated the "doctrine of tribal immunity [as] settled law" and dismissed any suit against a tribe absent congressional authorization (or a waiver). *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 756, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).

124 S.Ct. at 2030-31.

Applying these precedents, Justice Kagan, writing for the majority and joined by Justices Roberts, Kennedy, Breyer and Sotomayor, relied on the doctrine of *stare decisis* and concluded that tribal sovereign immunity remained a strong shield for Indian tribes and deferred to Congress to alter the course set by these precedents if it so chose. The dissent urged that it was time for the Court to

reverse course, admit that previous cases were wrongly decided "[r]ather than insist that Congress clean up a mess" that the Court created and significantly scale back the broad doctrine of tribal sovereign immunity. *Id.* at 2045 (Scalia, J. dissenting). Justice Thomas, writing the principal dissent and joined by Justices Scalia, Ginsburg and Alito, criticized the majority for failing to appreciate the changing economic reality in which "the commercial activities of tribes have increased dramatically . . . [with] tribes engage[d] in domestic and international business ventures including manufacturing, retail, banking, construction, energy, telecommunications, and more," *id.* at 2050 (internal quotation marks and citation omitted) (alterations added), yet remaining "largely litigation-proof" in the majority of these commercial enterprises. *Id.* at 2051. "As long as tribal immunity remains out of sync with this reality," Justice Thomas wrote, "it will continue to invite problems." *Id.* at 2052.

Although the majority in *Bay Mills* appeared to appreciate that a change in the doctrine of tribal sovereign immunity may be called for, it held fast to precedent, and in particular to the Court's decision in *Kiowa*, *supra*, which fully embraced the doctrine in its broadest sense. The majority observed that the Court in *Kiowa* "comprehended the trajectory of the tribes' commercial activity (which is the dissent's exclusive rationale for ignoring *stare decisis* . . .)," and concluded that "[t]he special brand of sovereignty the tribes retain – both its nature and its extent – rests in the hands of Congress." *Id.* at 2037.

## C.   Did Congress Intend to Abrogate Tribal Sovereign Immunity in Section 106(a) of the Bankruptcy Code?

It is against the backdrop of this recent Supreme Court decision, reaffirming the sanctity of the "special brand of sovereignty" that Indian tribes have historically enjoyed, that we analyze whether, in section 106 of the Bankruptcy Code, Congress unequivocally, unmistakably and without

14

ambiguity, by invoking the phrase "or other domestic governments," intended to abrogate the "special brand of sovereignty" that Indian tribes enjoy.

### 1.   The Ninth Circuit's decision in *Krystal Energy* and similar authority finding an unequivocal Congressional expression of abrogation in section 106 of the Bankruptcy Code.

Arguing that section 106 of the Bankruptcy Code unequivocally abrogates tribal sovereign immunity, the Litigation Trustee relies on the Ninth Circuit's decision in *Krystal Energy*, which explicitly so holds. In *Krystal Energy*, the Ninth Circuit found that the definition of "governmental unit" in § 101(27) broadly captured *all* foreign and domestic governments:

> It is clear from the face of §§ 106(a) and 101(27) that Congress did intend to abrogate the sovereign immunity of all "foreign and domestic governments." Section 106(a) explicitly abrogates the sovereign immunity of all "governmental units." The definition of "governmental unit" first lists a sub-set of all governmental bodies, but then adds a catch-all phrase, "or other foreign or domestic governments." 11 U.S.C. § 101(27). Thus, all foreign and domestic governments, including but not limited to those particularly enumerated in the first part of the definition, are considered "governmental units" for the purpose of the Bankruptcy Code, and, under § 106(a), are subject to suit.

357 F.3d at 1058. The court observed that "Indian tribes are certainly governments," and further found that "[t]he Supreme Court has recognized that Indian tribes are 'domestic dependent nations,'" and concluded that therefore "the category "Indian tribes" is simply a specific member of the group of the domestic governments, the immunity of which Congress intended to abrogate." *Id.* at 1057-58. Having reached the conclusion that Indian tribes are "domestic governments," the Ninth Circuit concluded that therefore Congressional intent to abrogate their sovereign immunity was clearly expressed in section 106, citing several bankruptcy court decisions so holding:

> Had Congress simply stated, "sovereign immunity is abrogated as to all parties who otherwise could claim sovereign immunity," there can be no doubt that Indian tribes, as parties who could otherwise claim sovereign immunity, would no longer be able

15

to do so. Similarly here, Congress explicitly abrogated the immunity of any "foreign or domestic government." Indian tribes are domestic governments. Therefore, Congress expressly abrogated the immunity of Indian tribes. *See In re Russell*, 293 B.R. 34, 44 (D. Ariz.2003) (concluding that § 106(a) abrogates tribal sovereign immunity "unequivocally[ ] and without implication"); see also *In re Davis Chevrolet, Inc.*, 282 B.R. 674, 683 n. 5 (Bankr. D. Ariz. 2002) ("It seems to this court that 'other domestic government' is broad enough to encompass Indian tribes."); *In re Mayes*, 294 B.R. 145, 157–60 (10th Cir. 2003) (McFeeley, J., dissenting) (arguing that § 106(a) does abrogate tribal sovereign immunity); *In re Vianese*, 195 B.R. 572, 575 (Bankr. N.D.N.Y. 1995) (holding that Tribe had individually waived its sovereign immunity, and stating in dicta that § 106(a) did abrogate the sovereign immunity of Indian tribes under the Bankruptcy Code).

357 F.3d at 1058 (alteration in original).

The *Krystal* court noted that this "syllogistic reasoning" had been followed by the Supreme Court in the context of Congressional abrogation of state sovereign immunity in *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), where the Supreme Court held that Congress had clearly expressed its intent to abrogate the sovereign immunity of the states when passing certain amendments to the Age Discrimination Enforcement Act (ADEA) that permitted suits against "any employer (including a public agency)" to be brought in any Federal or State court. *Kimel*, 528 U.S. at 73. Although "states" were not expressly listed in the provision authorizing such suits, the Supreme Court in *Kimel* looked to a different section of the ADEA which expressly defined "public agency" to include "the government of a State or political subdivision thereof," to conclude that "[r]ead as whole the plain language of these provisions clearly demonstrates Congress' intent to subject the States to suit for money damages at the hands of individual employees." *Kimel*, 528 U.S. at 74. In relying on *Kimel*, the Ninth Circuit found it "evident but, in the end, unimportant," that unlike the definition of "public agency" in the ADEA that specifically lists "States," no definition in the Bankruptcy Code mentions "Indian tribes." *Krystal Energy*, 357 F.3d at 1058-59.

16

The Ninth Circuit found sufficient support for its conclusion in the fact that "in enacting the Bankruptcy code, Congress was legislating against the back-drop of prior Supreme Court decisions, which *do* define Indian tribes as domestic nations, i.e. governments, as well as against the ordinary, all-encompassing meaning of the term "other foreign or domestic governments." *Id.* at 1059. Just as Congress need not "expressly mention Alabama and Wyoming" when abrogating the Eleventh Amendment immunity of "all states," the Ninth Circuit reasoned, it need not mention "Indian tribes" when abrogating the sovereign immunity of all "domestic governments." *Id.* Finding Indian tribes to be members of the "generic class" of "domestic governments" did not, the Ninth Circuit concluded, run afoul of the Supreme Court's "admonitions to 'tread lightly' in the area of abrogation of tribal sovereign immunity." *Id.* at 1060. "[T]he Supreme Court's decisions do not require Congress to utter the magic words "Indian tribes" when abrogating tribal sovereign immunity." *Id.* at 1061. According to *Krystal*, no prohibited implication is necessary to conclude that in section 106(a) Congress unmistakably intended to abrogate tribal sovereign immunity:

> Section 106(a) does not simply "authorize suit in federal court" under the Bankruptcy Code—it specifically abrogates the sovereign immunity of governmental units, a defined class that is largely made up of parties that could claim sovereign immunity. So to recognize is not, as the Navajo Nation suggests, to imply an abrogation that is not explicit in the statute. Instead, reading § 106(a)'s express abrogation as reaching Indian tribes simply interprets the statute's reach in accord with both the common meaning of its language and the use of similar language by the Supreme Court. No implication beyond the words of the statute is necessary to conclude that Congress "unequivocally expressed" its intent to abrogate Indian tribes' immunity.

357 F.3d at 1060. *See also In re Russell*, 293 B.R. 34, 39 (Bankr. D. Ariz. 2003) (finding a distinction between inference (prohibited) and deduction (permitted) and concluding that deduction from what is expressly said in sections 101(27) and 106(a) yielded the conclusion that Congress expressly intended to abrogate tribal sovereign immunity and thus finding "no violation of the

Court's proscription against abrogation by implication in concluding that § 106 includes Indian tribes"). More recently, in *In re Platinum Oil Props., LLC*, 465 B.R. 621, 643 (Bankr. D. New Mexico 2011) the bankruptcy court relied on the *Krystal Energy* and *In re Russell* line of authority, to similarly conclude that "[t]he language "or other foreign or domestic government" found in 11 U.S.C. § 101(27) includes Indian tribes, such that 11 U.S.C. § 106 together with 11 U.S.C. § 101(27) embodies Congress' clear and unequivocal abrogation of tribal sovereign immunity." The court in *Platinum Oil* recognized that this was not "the universal view," but apparently found it to be the better reasoned one. *Id.* at 644 n. 19.

In addition to this line of authority, the Litigation Trustee urges the Court to consider also that Justice Sotomayor, in her concurring opinion in *Bay Mills*, used the very phrase at issue here, i.e. "domestic governments," when comparing the sovereign status of States and Indian tribes. Justice Sotomayor observed that it would not foster comity among sovereigns to permit States to sue Indian tribes for commercial activity on State lands while at the same time precluding tribes from suing States for commercial activity on Indian lands. Following this observation, she noted that "[b]oth States and Tribes are domestic governments who come to this Court with sovereignty that they have not entirely ceded to the Federal Government." 134 S. Ct. at 2042 (Sotomayor, J. Concurring). While interesting to note that Justice Sotomayor used the very phrase at issue here, to wit "domestic governments," to characterize both States and Indian tribes, Justice Sotomayor was neither called upon to, nor did she imply that she was attempting to, create a generic description that could be used as a substitute for the phrase "Indian tribes" in the context of a Congressional abrogation of tribal sovereign immunity. Apart from this one instance in this concurring opinion, uttered years after section 106(a) of the Bankruptcy Code was adopted by Congress, it is undisputed

18

that Indian tribes have never been referred to by the Supreme Court as "domestic governments." The bankruptcy court placed little weight on this statement in Justice Sotomayor's concurring opinion in *Bay Mills* and so does this Court.

There cannot be reasonable debate that Indian tribes are both "domestic" (in fact the Tribe concedes this attribute) and also that Indian tribes are fairly characterized as possessing attributes of a "government." *See Bay Mills*, 134 S. Ct. at 2030 (observing that immunity is a "necessary corollary to Indian sovereignty and *self-governance* and that a tribe's immunity, "like its other *governmental powers*" are in Congress's hands); *Id.* at 2032 (noting that courts will not "lightly assume that Congress intends to undermine Indian *self-government*); *Turner v. United States*, 248 U.S. 354, 357-58 (1919) ("Like other *governments*, municipal as well as state, the Creek Nation was free from liability for injuries to persons or property due to mob violence or failure to keep the peace."); *Parks v. Ross*, 52 U.S. 362, 374 (1850) ("The Cherokees are in many respects a foreign and independent nation. They are *governed* by their own laws and officers, chosen by themselves.") (all emphasis added).

For the Litigation Trustee, it is enough to have established that Indian tribes are both "domestic" and "governments" to reach the inevitable and unassailable conclusion that Congress expressly and unequivocally meant to include Indian tribes when it employed the phrase "domestic governments" in § 101(27). *Krystal Energy, In re Platinum Oil*, and *In re Russell* expressly so hold and Judge McFeeley's dissent in *In re Mayes* concurs in this result. These courts agree with the Litigation Trustee that Congress need not invoke the "magic words Indian tribes" when intending to abrogate tribal sovereign immunity. *But*, these decisions do not recognize that there is not one example in all of history where the Supreme Court has found that Congress intended to abrogate

19

tribal sovereign immunity *without* expressly mentioning Indian tribes somewhere in the statute. Nor do these decisions place any significance on the fact that in many instances, when Congress did mean to abrogate tribal immunity, it did use the "magic words" "Indian tribes" in doing so. As discussed *infra*, *Krystal* and *In re Russell* do not give sufficient consideration to the "special brand" of sovereign immunity that Indian tribes enjoy. *Bay Mills*, 134 S. Ct. at 2037.

2.    The Eight Circuit Bankruptcy Appellate Panel's decision in *In re Whittaker* and similar authority finding that Congress did not clearly and unequivocally abrogate the sovereign immunity of Indian tribes in § 106 of the Bankruptcy Code.[6]

In *In re Whittaker*, 474 B.R. 687 (8th Cir. B.A.P. 2012), the Eighth Circuit Bankruptcy Appellate Panel expressly rejected the Ninth Circuit's reasoning in *Krystal*, and held that absent a specific mention of "Indian tribes" in the Bankruptcy code, any finding of abrogation under § 106(a) necessarily must rely on inference or implication, both of which are prohibited by Supreme Court precedent. Quoting from *In re National Cattle Congress*, *supra*, the panel noted cases in which specific statutory reference to Indian tribes had been found sufficiently unequivocal to abrogate tribal sovereign immunity:

> Courts have found abrogation of tribal sovereign immunity in cases where Congress has included "Indian tribes" in definitions of parties who may be sued under specific statutes. *See Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir. 1989) (finding congressional intent to abrogate Tribe's sovereign immunity with respect to violations of the Resource Conservation and Recovery Act, [which expressly included "an Indian tribe or authorized tribal organization" in the definition of "municipalities" covered by the Act] ); *Osage Tribal Council v. United*

---

[6] This Court recognizes that a Bankruptcy Appellate Panel (BAP) holding is not on par with a Circuit Court of Appeals holding. A BAP is a three judge panel consisting of three bankruptcy judges that hears appeals from a single bankruptcy judge. An appeal can be taken from the BAP decision to that Judicial Circuit's Court of Appeals. A BAP ruling is not binding precedent in that Circuit. Nevertheless, this Court finds persuasive the reasoning and conclusion of the Eighth Circuit BAP in *Whittaker*.

> *States Dep't of Labor*, 187 F.3d 1174, 1182 (10th Cir. 1999) (same re Safe Drinking Water Act [which also included "Indian tribes" in the definition of "municipalities" covered by the Act] ). "Where the language of a jurisdictional grant is unambiguous as to its application to Indian tribes, no more is needed to satisfy the Santa Clara requirement than that Congress unequivocally state its intent." *Osage Tribal Council*, 187 F.3d at 1182.
>
> Where the language of a federal statute does not include "Indian tribes" in definitions of parties subject to suit or does not specifically assert jurisdiction over "Indian tribes", courts find the statute insufficient to express an unequivocal congressional abrogation of tribal sovereign immunity. *See Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 357–58 (2d Cir. 2000) (holding Indian tribe immune from suit under the Copyright Act); *Florida Paraplegic [ Ass'n. Inc. v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1131 (11th Cir. 1999)] (stating that because Congress made no specific reference to Tribes anywhere in the ADA, tribal immunity is not abrogated; suit under ADA dismissed). A Congressional abrogation of tribal immunity cannot be implied. *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. 1670.

474 B.R. at 691 (quoting *In re Nat'l Cattle Congress*, 247 B.R. at 267) (alterations added). Finding *Krystal* unpersuasive given its failure to cite one case where tribal immunity was found to have been abrogated in the absence of a specific mention of the words "Indian tribes," and deriding the Ninth Circuit's failure to adhere to the clear proscription against inference and implication in finding such abrogation, the panel refused to follow *Krystal*:

> In sum, the cases relied on by *Krystal* and the trustees here do not support the proposition that Congress can express its intent to abrogate sovereign immunity as to Indian tribes without specifically saying so. Instead, courts have been directed to adhere to the general principle that statutes are to be interpreted to the benefit of Indian tribes. . . . We hold that in enacting § 106, Congress did not unequivocally express its intent by enacting legislation explicitly abrogating the sovereign immunity of tribes. As the Court in *In re National Cattle Congress* held, holding otherwise requires an inference which is inappropriate in this analysis. The Tribes are, therefore, protected from suit here by their sovereign immunity.

474 B.R. at 695 (footnotes omitted).

The Tenth Circuit Bankruptcy Appellate Panel suggested the same conclusion in *In re Mayes*, 294 B.R. 145 (B.A.P. 10th Cir. 2003). Although not a basis for the holding in *In re Mayes*, the panel

21

noted that § 106(a) "probably" could not be interpreted as an unequivocal expression of Congressional intent to abrogate tribal sovereign immunity:

> Section 101(27) does not refer to Indian nations or tribes. The only portion of that section that could be said to apply to an Indian nation or tribe is its reference to a "domestic government." While several bankruptcy courts have either expressly or impliedly held that Indian nations or tribes are "domestic governments" to which §§ 101(27) and 106 apply, *see Warfield v. Navajo Nation (In re Davis Chevrolet, Inc.)*, 282 B.R. 674, 678 n. 2 (Bankr. D. Ariz. 2002); *Turning Stone Casino v. Vianese (In re Vianese)*, 195 B.R. 572, 575–76 (Bankr. N.D.N.Y. 1995); *In re Sandmar Corp.* 12 B.R. 910, 916 (Bankr. D.N.M. 1981), we conclude that they probably are not. Accordingly, § 106(a) likely could not abrogate Appellee's immunity even if it were constitutional. *See In re National Cattle Congress*, 247 B.R. 259, 266–67 (Bankr. N.D. Iowa 2000). Our conclusion comports with the general proposition that Congress must make its intent to abrogate an Indian nation's immunity clear and unequivocal, and actions against tribes cannot merely be implied. *See, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

294 B.R. at 148 n. 10.

The Tribe also convincingly relies on Supreme Court precedent analyzing issues of state sovereign immunity suggesting that inference from generic descriptions of a group of entities is impermissible to support a finding of abrogation.  In *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985), the Court found that a provision in the Rehabilitation Act of 1973 that permitted suit to be filed against "any recipient of federal assistance," was insufficient to express clearly and unequivocally Congress's intent to abrogate the sovereign immunity of the states:

> The statute thus provides remedies for violations of § 504 by "any recipient of Federal assistance." There is no claim here that the State of California is not a recipient of federal aid under the statute. But given their constitutional role, the States are not like any other class of recipients of federal aid. A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must do so specifically. Accordingly, we hold that the Rehabilitation Act does not abrogate the Eleventh Amendment bar to suits against the States.

473 U.S. at 245-46 (citations omitted).[7]

Similarly, in *Dellmuth v. Muth*, 491 U.S. 223 (1989), reiterating its reasoning in *Atascadero*, the Supreme Court found insufficient Congressional intent to abrogate states' immunity in the Education of Children With Handicaps Act ("EHA"). First, the Court completely rejected efforts to rely on *any* nontextual source as support for a finding of such intent:

> More importantly, however, respondent's contentions [regarding Congress's amendments to the Rehab Act in response to *Atascadero* clarifying an intent to abrogate state immunity as evidence of such intent in the EHA] are beside the point. Our opinion in *Atascadero* should have left no doubt that we will conclude Congress intended to abrogate sovereign immunity only if its intention is "unmistakably clear in the language of the statute." *Atascadero*, 473 U.S., at 242, 105 S.Ct., at 3147. Lest *Atascadero* be thought to contain any ambiguity, we reaffirm today that in this area of the law, evidence of congressional intent must be both unequivocal and textual. Respondent's evidence is neither. In particular, we reject the approach of the Court of Appeals, according to which, "[w]hile the text of the federal legislation must bear evidence of such an intention, the legislative history may still be used as a resource in determining whether Congress' intention to lift the bar has been made sufficiently manifest." 839 F.2d, at 128. Legislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment. If Congress' intention is "unmistakably clear in the language of the statute," recourse to legislative history will be unnecessary; if Congress' intention is not unmistakably clear, recourse to legislative history will be futile, because by definition the rule of *Atascadero* will not be met.

491 U.S. at 230 (alteration added).

Turning to the textual arguments in support of abrogation, the Court noted first that "the EHA makes no reference whatsoever to either the Eleventh Amendment or the States' sovereign immunity." 491 U.S. at 231.[8] The Court then rejected the suggested inference that because the EHA

---

[7] Congress in fact responded to *Atascadero* by passing clarifying legislation. *See* 42 U.S.C. § 2000d–7(a)(1), which explicitly states that "[a] state shall not be immune . . . from suit in Federal court for a violation of Section 504 of the Rehabilitation Act of 1973."

[8] As discussed *infra*, and as urged by the Litigation Trustee, this is a point of distinction between *Dellmuth* and this case, in which the subject of abrogation of sovereign immunity is expressly

refers often to "states" and to their important role in effectuating the purposes of the EHA, Congress

must have intended to subject them to suit:

> We recognize that the EHA's frequent reference to the States, and its delineation of
> the States' important role in securing an appropriate education for handicapped
> children, make the States, along with local agencies, logical defendants in suits
> alleging violations of the EHA. This statutory structure lends force to the inference
> that the States were intended to be subject to damages actions for violations of the
> EHA. But such a permissible inference, whatever its logical force, would remain just
> that: a permissible inference. It would not be the unequivocal declaration which, we
> reaffirm today, is necessary before we will determine that Congress intended to
> exercise its powers of abrogation.

491 U.S. at 232. Thus, *Dellmuth* forbids consideration of nontextual evidence and rejects logical

inference as a method of divining Congressional intent to abrogate sovereign immunity, at least in

the absence of other concrete textual support permitting one to draw "with perfect confidence" the

conclusion that abrogation was intended. *Id.* at 231.

### 3.      Bankruptcy Judge Shapero's opinion.

Judge Shapero largely adopts the reasoning of the Ninth Circuit in *Krystal Energy* and

embraces the "deductive reasoning" rationale of *In re Russell*. Judge Shapero was persuaded by the

distinction he perceived between interpreting a statute that is silent on the topic of abrogation of

sovereign immunity and interpreting a statute that mentions the subject but imperfectly defines its

scope. The former instance, in Judge Shapero's opinion, requires implication (prohibited) but the

latter requires only deduction (permitted):

> In the Court's opinion, there is a material difference between (a) determining the
> scope or extent of an explicitly stated abrogation of sovereign immunity, as is the
> issue here; and (b) determining whether there was any abrogation in the first place
> where the statute is silent on the matter.

---

addressed in section 106(a) of the Bankruptcy code.

> In the Court's opinion, the most important lesson from *In re Russell* is that implication is distinguishable from deduction. Black's Law Dictionary (9th ed. 2009) defines deduction as "[t]he act or process of reasoning from general propositions to a specific application or conclusion." For example, the Bankruptcy Code does not specifically list "Arizona" in its definition of governmental units whose sovereign immunity is abrogated. But that conclusion can be deduced by a simple syllogism: sovereign immunity is abrogated as to states; Arizona is a state; therefore sovereign immunity is abrogated as to Arizona. *In re Russell*, 293 B.R. at 41. Similarly, it can be said that sovereign immunity is abrogated as to "other . . . domestic governments," Indian tribes are "other ... domestic governments" (and indeed they are the only "other ... domestic governments"), therefore sovereign immunity is abrogated as to Indian tribes.

516 B.R. at 474-75 (initial citations and footnote omitted). According to Judge Shapero, because in this case the statute undeniably directly addresses abrogation of sovereign immunity in § 106(a), and the Tribe only objects that it does not do so clearly enough as to the special sovereign immunity possessed by Indian tribes, Judge Shapero concludes that this is a case of "deductive" reasoning, to be distinguished from those cases where the statute does not touch upon the issue of sovereign immunity *at all*, which then require the prohibited "implication and inference." And because Judge Shapero also concludes that "domestic government" clearly encompasses "Indian tribes," he "deduces" that therefore §106(a) unequivocally expresses an intent to abrogate tribal immunity.

The faulty premise in this reasoning is that it presumes the very issue in contention, i.e. that "domestic government" is a phrase clearly understood beyond all rational debate to encompass an Indian tribe, just as the word "state" is clearly understood beyond all rational debate to encompass Arizona and the other 49 "states." But the two "deductions" are quite obviously qualitatively different. While this Court accepts the conclusions that Indian tribes are both "domestic" and bear the hallmarks of "governments," it does not necessarily follow that combining these admitted attributes together in a single generic phrase in § 101(27) "unequivocally and unmistakably," and

25

"without ambiguity" leads one to conclude with "perfect confidence" that Congress intended thereby to include Indian tribes and to abrogate the "special brand" of sovereign immunity enjoyed by Indian tribes without so much as a reference to Indian tribes in the Bankruptcy Code.

### 4. This Court cannot conclude with "prefect confidence" that Congress intended to abrogate tribal sovereign immunity by invoking the catchall phrase "other domestic governments" in section 101(27) of the Bankruptcy Code.

While perhaps it may be said with "perfect confidence" that Indian tribes are both "domestic" in character and function as a "government," this Court cannot say with "perfect confidence" that Congress combined those terms in a single phrase in § 101(27) to clearly, unequivocally and unmistakably express its intent to include Indian tribes among those sovereign entities specifically mentioned whose immunity was thereby abrogated. While logical inference may support such a conclusion, Supreme Court precedent teaches that logical inference is insufficient to divine Congressional intent to abrogate tribal sovereign immunity. And if indeed the only sovereign entity not specifically listed in section 101(27) is Indian tribes, and if Congress clearly intended that they be included, why not just mention them by their specific name, as Congress has *always* done in the past?

The argument in favor of abrogation relies heavily on the fact that § 106(a) contains a broad, sweeping abrogation of the immunity of every type of sovereign entity and reasons from this that excluding Indian tribes from that list would be anomalous, or "sophistry" to quote the Litigation Trustee. But this is not necessarily so. The Supreme Court early, and recently, has expressed the view that the immunity possessed by the Indian tribes is different in kind from that possessed by foreign entities and different in kind from that possessed by the states. Early, the Supreme Court held:

But we think that in construing them, considerable aid is furnished by that clause in the eighth section of the third article; which empowers congress to 'regulate commerce with foreign nations, and among the several states, and with the Indian tribes.'

In this clause they are as clearly contradistinguished by a name appropriate to themselves, from foreign nations, as from the several states composing the union. They are designated by a distinct appellation; and as this appellation can be applied to neither of the others, neither can the appellation distinguishing either of the others be in fair construction applied to them. The objects, to which the power of regulating commerce might be directed, are divided into three distinct classes—foreign nations, the several states, and Indian tribes. When forming this article, the convention considered them as entirely distinct. We cannot assume that the distinction was lost in framing a subsequent article, unless there be something in its language to authorize the assumption.

*Cherokee Nation v. State of Georgia*, 30 U.S. 1, 18 (1831).

Recently, in *Bay Mills*, Justice Sotomayor in her concurrence draws on this description of the Indian tribes in *Cherokee Nation* in characterizing the tribes today:

The case of *Cherokee Nation v. Georgia*, 5 Pet. 1, 8 L.Ed. 25 (1831), is instructive. In 1828 and 1829, the Georgia Legislature enacted a series of laws that purported to nullify acts of the Cherokee government and seize Cherokee land, among other things. *Id.*, at 7–8. The Cherokee Nation sued Georgia in this Court, alleging that Georgia's laws violated federal law and treaties. *Id.*, at 7. As the constitutional basis for jurisdiction, the Tribe relied on Article III, § 2, cl. 1, which extends the federal judicial power to cases "between a state, or the citizens thereof, and foreign states, citizens, or subjects." 5 Pet., at 15 (internal quotation marks omitted). But this Court concluded that it lacked jurisdiction because Tribes were not "foreign state[s]." *Id.*, at 20. The Court reasoned that "[t]he condition of the Indians in relation to the United States is perhaps unlike that of any other two people in existence." *Id.*, at 16. Tribes were more akin to "domestic dependent nations," the Court explained, than to foreign nations. *Id.*, at 17. We have repeatedly relied on that characterization in subsequent cases. *See, e.g., Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 141, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982).

134 S. Ct. at 2040-41 (Sotomayor, J. Concurring) (alterations in original).

Given the historical treatment of Indian tribes as special and distinct from either states or

foreign governments, one cannot presume that Congress intended to include them, without mentioning them but solely by force of deduction, as among a group of sovereign entities with whom they share very little other than their sovereign status.  There is not a single example of a Supreme Court decision finding that Congress intended to abrogate the sovereign immunity of the Indian tribes without specifically using the words "Indians" or "Indian tribes." When asked at the hearing on this matter to provide the Court with an example of a case where the Supreme Court found an abrogation of tribal immunity where the words "Indians" or "Indian tribes" were not used, counsel for the Litigation Trustee referenced *F.A.A. v. Cooper*, 132 S. Ct. 1441 (2012), which did not touch on the issue of tribal sovereign immunity at all.  The Court in *Cooper* explained that although congressional intent to waive the Government's immunity must be unmistakably clear, "Congress need not state its intent in any particular way," and the Court has "never required Congress to use magic words." *Id.* at 1448. *Cooper* stands for the general proposition that Congress need not use any particular "magic words" if the intent to abrogate immunity is clearly discernible from the statutory text. *Cooper* is not a case dealing with Indian tribes or tribal sovereign immunity and thus was unresponsive to the Court's inquiry.  Counsel for the Litigation Trustee also directed the Court's attention on this point to *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531 (1987), a case in which the Supreme Court concluded that the phrase "in Alaska," as used in a statue providing for protection of Alaska's natural resources, was unambiguous and therefore rejected the Ninth Circuit's reliance on the maxim of statutory construction that "doubtful expressions must be resolved in favor of Indians." 480 U.S. at 55. *Gambell* had nothing to do with tribal sovereign immunity at all and certainly was not a case where the Supreme Court found a waiver of tribal immunity in a statute that did not mention the words "Indian" or "Indian tribes."

28

By contrast, there are many examples where lower courts have found such abrogation where Indian tribes *are* mentioned by name. *See  Osage Tribal Council v. United States Dept of Labor*, 187 F.3d 1174, 1182 (10th Cir. 1999) (concluding that Congress intended the Safe Drinking Water Act to abrogate tribal sovereign immunity where jurisdiction was granted over "persons" and "persons" was defined to include "municipalities" which in turn was defined to include "Indian tribes"); *United States v. Weddell*, 12 F. Supp. 2d  999, 1000 (D.S.D. 1998) (concluding that Indian tribe was subject to garnishment under the FDCPA where "garnishee" defined to include "person" and person defined to include an Indian tribe); *Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir. 1989) (concluding that Congress intended the Resource Conservation and Recovery Act to abrogate tribal immunity where "person" is defined to include a municipality and municipality is defined to include an Indian tribe).

In contrast to these cases, we have examples of lower courts refusing to find abrogation of tribal immunity where Indian tribes are *not* referenced by name. *Florida Paraplegic*, 166 F.3d 1126, 1132-33 (11th Cir. 1999), is particularly instructive.  In *Florida Paraplegic*, the Eleventh Circuit concluded that Congress did not clearly express an intent in the Americans With Disabilities Act ("ADA") to abrogate tribal sovereign immunity, although it explicitly provided that "states" were not immune from suit under the ADA, because it failed to specifically mention Indian tribes.  The Eleventh Circuit first noted that abrogation of tribal immunity must be "unequivocally expressed," heeding "the Supreme Court's repeated instruction that, because of the 'unique trust relationship between the United States and the Indians,' where Indian rights are at issue, ambiguities in federal laws must be resolved in the Indians' advantage." *Id.* at 1131 (quoting *Blackfeet, supra*).  The court then concluded that the absence of any reference to "Indians" or "Indian tribes" anywhere in the

29

ADA precluded a finding that Congress intended to abrogate their immunity from suit:

> An examination of Title III of the ADA reveals that it does not meet the strict requirements of this test. Despite its apparent broad applicability, *see supra* Part III.A, no specific reference to Indians or Indian tribes exists anywhere in Title III.

166 F.3d at 1131. Finding no mention of Indian tribes in the provision of the ADA expressly providing that States were not immune from suit under the Eleventh Amendment, the Eleventh Circuit ruled that no such abrogation could be implied:

> Congress has demonstrated in this very statute its ability to craft laws satisfying the Supreme Court's mandate that courts may find that Congress has abrogated sovereigns' immunity from lawsuits only where it has expressed unequivocally its intent to do so. That it chose not to similarly include an abolition of the immunity of Indian tribes is a telling indication that Congress did not intend to subject tribes to suit under the ADA.

166 F.3d at 1133.

Importantly, as discussed *supra*, the Supreme Court has refused to permit an inference of abrogation in the context of state immunity from suit where such intent must be implied based on a generic definition that logically encompasses the sovereign entity. *See Atascadero*, *supra*, 473 U.S. at 245.

Finally, in a number of statutes, Congress has clearly considered Indian tribes to be different from other forms of "government," and needing separate and distinct appellation. *See* 7 U.S.C. § 8310 (listing "States or political subdivisions of States, national governments of foreign countries, domestic or international organizations, Indian Tribes and other persons"); 42 U.S.C. § 9601(16) ("CERCLA") (listing "any State or local government, any foreign government, any Indian Tribe"); 16 U.S.C. § 698v-4 (listing "Federal, State, and local governmental units, and [] Indian Tribes and Pueblos"); 49 U.S.C. § 5121 (listing "a unit of State or local government, an Indian Tribe, a foreign

government").

While one may question the historical legitimacy of the doctrine, and one may be uncomfortable with the notion that Indian tribes are subject to many laws yet in many cases we are powerless to enforce them against the tribes, and while one may find it tempting to deduce that Congress actually meant to include Indian tribes when it employed the catchall phrase "other domestic governments," notwithstanding the fact that Indian tribes are not mentioned by name in any provision of the Bankruptcy Code, this Court has recent, explicit direction from the Supreme Court rejecting this interpretation. This Court is instructed in *Bay Mills* that Indian tribes retain every bit of sovereign immunity they have historically possessed and that, absent clear, unequivocal and unmistakable language abrogating that immunity, it is not our place to lightly depart from centuries of unwavering judicial deference to Congress's role in defining with exactitude the instances in which it is appropriate to abrogate the sovereign immunity of Indian tribes. The Litigation Trustee concedes that if this Court finds any ambiguity in § 106(a), it cannot conclude that the language is clear, unequivocal and unmistakable and must favor the Indian tribes and uphold their immunity from suit.

This Court cannot say with "perfect confidence" that the phrase "other domestic government" unambiguously, clearly, unequivocally and unmistakably refers to Indian tribes. The Bankruptcy Court's conclusion does not give appropriate deference to the Supreme Court's recent admonition that "[t]he special brand of sovereignty the tribes retain – both the nature and its extent – rests in the hands of Congress." *Bay Mills*, 134 S. Ct. at 2037. While Congress may not have to utter "magic words," Supreme Court precedent clearly dictates that it utter words that beyond equivocation or the slightest shred of doubt mean "Indian tribes." Congress did not do so in sections 106(a) and 101(27)

31

of the Bankruptcy Code and thus the Tribe is entitled to sovereign immunity from suit in the underlying MUFTA proceeding.

## IV.   CONCLUSION

For the foregoing reasons, the Court REVERSES the ruling of the Bankruptcy Court, holds that the Tribe is entitled to sovereign immunity from suit in this MUFTA proceeding and REMANDS the matter to the Bankruptcy Court for further proceedings on the issue of waiver of sovereign immunity, as outlined in the Bankruptcy Court's December 23, 2010 Stipulated Order.

IT IS SO ORDERED.

Dated:   **JUN 0 9 2015**

Paul D. Borman
United States District Judge